## JOURGENSEN v. FRAITEL et al.

*(Supreme Court, General Term, Second Department. July 22, 1892.)*

**1. LEASE—MEMORANDUM AGREEMENT—POSSESSION.**

April 3d plaintiff agreed to lease defendants the top floor of a certain building for five years. A memorandum of the agreement was signed, by which a formal lease was to be executed and delivered before May 1st, but this was never done. The top floor intended was not in existence April 3d, but was to be made by raising the buildings, and was to be finished about May 15th. In fact, it was not ready for occupancy till about June 1st. In the interval between May 1st and the completion of the premises, defendants' machinery was stored in the then top floor of the building. Defendants were nearly all of June in fitting their machinery, having taken possession June 2d. *Held,* that defendants were liable for rent from May 1st, there being sufficient evidence to support a finding that the lease was to commence at that time.

**2. LEASE OF POWER—LOSS BY TRANSMISSION.**

A lease of premises which includes the furnishing by the lessor of "four horse power pulley face" means four horse power at the lessee's pulley; such lessee not being chargeable with the loss of power in transmission from the lessor's pulley.

Appeal from judgment on report of referee.

Action by Christian Jourgensen against Benjamin D. Fraitel and others. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before BARNARD, P. J., and CULLEN, J.

*Blair, Rudd & Simis*, for appellants.  *Herman Frank*, for respondent.

BARNARD, P. J.  On the 3d of April, 1884, the plaintiff agreed to lease to the defendants the top floor in Nos. 96 and 98 Maiden Lane, New York.  A memorandum of the agreement was signed, and a formal lease was to be executed, which was never done.  The lease was to be for five years.  The premises called the "top floor" were not in existence when the memorandum was signed, but were to be made by raising the buildings on the lots.  The lease was to be delivered before May 1, 1884, and the work was to be finished on or about May 15, 1884.  The rent was to be $1,200 per year, payable monthly, and the leasing included the furnishing "four horse power pulley face."  The premises were not completed until early in June, 1884.  In the interval between the 1st of May, 1884, and the completion of the premises, the defendants' machinery was stored in the then top floor of the buildings, or one of them.  When the power was tested by actual experience, it was found insufficient to run the machinery; and the parties differed as to the fact of four horse power pulley face being given.  The defendants, at all events, required more power, and promised to pay for all furnished over four horse power in addition to the rent.  The defendants were nearly or quite all of June in fitting their machinery, and have paid the rent after the 1st of July, 1884, regularly.  The plaintiff seeks to recover rent for the months of May and June, 1884, and also for additional power furnished under the agreement.  As to the month of June, 1890, there can be no question of the right of the plaintiff to the rent.  The premises were ready for occupancy on or about the 1st of June, 1884, and on the 2d the defendants took possession.  The defendants testify that plaintiff agreed to charge no rent until the defendants could get into the premises and work.  The plaintiff denies this emphatically:  "I never in any of these conversations released them from the payment of the two months' rent."  The memorandum necessarily implies that the lease was to commence May 1, 1884, for it calls for the delivery of the formal lease before that time.  The formal lease proposed also stated such to be the contract.  Upon one of the leases the defendant made his objection to the terms of the lease in some respects, but no suggestion was made that the lease was not to commence May 1, 1884, and that the rent was to be monthly from that time.  The memorandum gave the plaintiff until on or about the 15th of May, 1884, to finish the premises.  The defendants actually had their premises upon the top floor of the building as it was before the repairs were completed.  I think the finding that the agreement was that the lease was to commence May 1, 1884, is supported by the evidence.

The question of fact whether more than four horse power was furnished, was the subject of very contradictory evidence.  The plaintiff testifies that the larger pulley which was put on to obtain more power will give from six to eight horse power, and that he knew the facts, and that, at the speed at which the plaintiff's shaft revolved during the defendants' occupancy, the minimum power rendered to defendants was over five horse power, and that the market price of power was two dollars per week.  The witness Pierce, a machinist, testifies that the first pulley would carry four horse power pulley face, and, with the larger one put on, that it would take six horse power to run the defendants' machinery.  The defendants produced evidence tending to show that no more than four horse power was furnished, and the referee has found that one additional horse power was used, worth two dollars per week.  The case is not clear whether or not the referee found that the five horse power used by defendants was based upon the power at the plaintiff's pulley or at the defendants' pulley.  I think the agreement was intended to give the defendants four horse power for their use, and that it was not enough to give that power at the plaintiff's pulley without allowing for the loss of power lost

in transmission to the defendants' pulley.    The first lease made out by plaintiff rents "four horse steam power," the amount of power actually used to be determined by mechanical device. · The second lease refers to the power "on premises of C. Jourgensen on store floor. "    Neither of these leases were signed, as has been stated.    The findings do not show whether the power was calculated at plaintiff's or defendants' pulley.    There is one exception, which seems to show that the calculation was made at the plaintiff's pulley. The plaintiff, at folio 176 of the case, is asked whether power would be lost in transmission from the pulley of plaintiff to that of defendants.    The question was excluded, on the ground that plaintiff had testified to power as given at one place, and that the question asked for amount of power at another place.    From this ruling it seems that the referee based his report upon the amount of power given at plaintiff's pulley, and that upon the power actually used by defendants.

The judgment should therefore be reversed, and a new trial granted, costs to abide event, unless the plaintiff remits the amount found due for extra power, in which case the judgment is affirmed for the balance, without costs to either party upon appeal.